IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                          No. CR 08-2575 JB

FLOYD LEWIS TRUJILLO, JR.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Downward Departure and Variance, filed September 1, 2010 (Doc. 50). The Court held a sentencing hearing on September 15, 2010. The primary issues are: (i) whether the Court should depart from the advised guideline sentence under U.S.S.G. § 5K2.10 for victim's conduct; and (ii) whether the Court should vary from the advisory guideline range because the crime was aberrant behavior for Defendant Floyd Lewis Trujillo, Jr. Because the Court believes a downward departure under § 5K2.10 is appropriate, the Court will grant a downward departure of 7 offense levels because of the victim's conduct. The Court will deny Trujillo's request for a variance.

## PROCEDURAL BACKGROUND

The United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR") for Trujillo on July 2, 2010. In the PSR, the USPO calculated Trujillo's offense level to be 26 and his criminal history category to be I, establishing a guideline imprisonment range of 63 to 78 months for Count 1, voluntary manslaughter; and Count 2, use of a firearm in relation to a crime of violence, requires a mandatory minimum of 120 months pursuant to 18 U.S.C.

§ 924(c)(1)(A)(iii). There being no objections to the PSR, the Court adopts the USPO's guideline calculations in the PSR as its own. The Court accepts the plea agreement, which largely addresses Trujillo's right to appeal.

Trujillo requests a downward departure and variance for a total sentence of ten years and one day, because the crime was aberrant behavior for Trujillo and because the victim, Brian Lester Sam, was the initial aggressor. Trujillo contends that this offense is his first contact with law enforcement, and that he has no prior juvenile arrests, adjudications or adult arrests or convictions. Trujillo further contends that he was not looking for trouble, and the facts of this case are unlikely to occur again, so Trujillo is unlikely to reoffend. Trujillo argues, therefore, that the shooting Sam is aberrant to Trujillo's nature and background.

Trujillo contends that Sam provoked the killing because Sam was the initial aggressor. Trujillo alleges that he and Sam were friends and relatives. According to Trujillo's account of the crime, on the night of the killing, Sam and his brother, Arlonzo, were at Trujillo's mother's residence. They were watching television and drinking. Sam was intoxicated and quarreled with Arlonzo. Trujillo and his brother, Lewis, separated Sam and Arlonzo, and Lewis and Arlonzo left Trujillo's mother's residence, leaving Trujillo alone with Sam. Sam began to quarrel with Trujillo. Trujillo attempted to walk away, and Sam followed him outside, poking at Trujillo as if Sam had a knife, and Trujillo believed Sam had a knife. During the quarrel, Sam referenced Trujillo's firearm, and Sam knew where Trujillo kept the firearm, which led Trujillo to fear that Sam might access the firearm. With Sam following, Trujillo retrieved the firearm from his bedroom and pointed it at Sam, expecting Sam to back down. Sam did not back down. Sam cursed at Trujillo and stated that Trujillo did not have the courage to shoot him. Sam then moved towards Trujillo. Fearing that Sam was moving to attack him and believing himself in danger, Trujillo took two steps

back and intentionally shot Sam once in the side.

Trujillo acknowledges that the Court is required to impose a sentence of ten years, but argues that, given the facts of the offense and Trujillo' specific characteristics, a sentence greater than 10 years and 1 day is not warranted both under 18 U.S.C. § 3553(a) and U.S.S.G. § 5K2.10. Trujillo argues that Sam presented a danger to Trujillo, but Trujillo acknowledges that his response to Sam's aggression was not proportional. Trujillo argues, however, that a departure is warranted under U.S.S.G. § 5K2.10, because proportionality is only one factor the Court considers under § 5K2.10, and if his actions were proportional, then he would be justified in defending himself and no crime would have been committed. Trujillo argues, therefore, that § 5K2.10 applies to cases of imperfect self-defense. Trujillo further argues that Trujillo acted only under great pressure, which Sam produced, and thus Trujillo is not a danger to the community, and he is unlikely to reoffend.

On September 7, 2010, the United States filed the its Response to Defendant's Motion for Downward Departure and Variance. See Doc. 51. Plaintiff United States of America requests a sentence within the guidelines be imposed and run consecutively with the mandatory ten year sentence required for Count 2. The United States argues that, at best, Trujillo's version of the events the night of the crime makes the killing imperfect self-defense. The United States argues that Trujillo has already pled to manslaughter instead of second-degree murder with which the grand jury charged him, and that further reducing his sentence would, in effect, credit him twice for the victim's initial aggression. See Cannon v. Mullin, 383 F.3d 1152, 1167 (10th Cir. 2004)("[S]ome courts and commentators refer to manslaughter as an 'imperfect' self-defense -- that is, although the defendant cannot satisfy all the elements of self-defense, he is less culpable because he can satisfy some of the elements." (citing 2 Wayne R. LaFave, Substantive Criminal Law § 10.4(i) (2d ed. 2003))). The United States further argues that a sentence of ten years and one day would effectively

give Trujillo a sentence of one day for the manslaughter under Count 1, because Count 2 carries a mandatory sentence of ten years. The United States argues that each Count is a separate crime and should carry a separate punishment.

With respect to the claim of aberrant behavior, the United States argues that the Court need not tarry long on this argument, because, pursuant to U.S.S.G. § 5K2.20(c)(1) and (2), the Court may not depart downward if the "offense involved serious bodily injury or death, or if the "defendant discharged a firearm or otherwise used a firearm or dangerous weapon." Both disqualifiers apply to the Trujillo's conduct, the United States asserts, so he should receive no consideration for aberrant behavior.

At the hearing, Trujillo replied to the United States' argument that he has in effect already been credited for Sam's aggression by pleading to the charge of manslaughter by pointing out that the 18 U.S.C. § 1112 does not recognize imperfect self-defense as a basis for manslaughter, but that the statute recognizes sudden quarrel as a basis for manslaughter. Trujillo argues that, because the crime occurred in a sudden quarrel, there is a basis for charging him with manslaughter that does not take account of Sam's aggression. Trujillo further asserts that the Court should consider the victim's behavior when sentencing, despite the United States considering it when determining what charge to bring. Trujillo also clarified that he seeks a variance for aberrant behavior under 18 U.S.C. § 3553, conceding that a downward departure is not available for crimes of violence under U.S.S.G. § 5K2.20(c). Trujillo contends that the Court should consider the appropriateness of the sentence as a whole in light of the totality of the circumstances, not count-by-count, and that a sentence of ten years and one day is appropriate under 18 U.S.C. § 3553(a)'s factors. Trujillo also argues that his use of a gun is effectively not a separate crime, because if he had used a knife to kill Sam there would be no separate or mandatory minimum sentence.

## ANALYSIS

The Court grants Trujillo's request for a downward departure, but denies his request for a variance. The Court believes a 7 level downward departure is warranted, because Sam provoked Trujillo. The Court believes, however, that a variance from the advisory guideline range would not adequately serve the purposes set forth in 18 U.S.C. § 3553(a).

**I.   THE COURT GRANTS TRUJILLO'S REQUEST FOR A DOWNWARD DEPARTURE.**

The Court grants Trujillo's request for a downward departure. "Victim misconduct is an encouraged basis for departure under U.S.S.G. § 5K2.10 . . . ." Koon v. United States, 518 U.S. 81, 83 (1996). Accord United States v. LaVallee, 439 F.3d 670, 708 (10th Cir. 2006). U.S.S.G. § 5K2.10 provides:

> If the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense. In deciding whether a sentence reduction is warranted, and the extent of such reduction, the court should consider the following:
>
> (1) The size and strength of the victim, or other relevant physical characteristics, in comparison with those of the defendant.
>
> (2) The persistence of the victim's conduct and any efforts by the defendant to prevent confrontation.
>
> (3) The danger reasonably perceived by the defendant, including the victim's reputation for violence.
>
> (4) The danger actually presented to the defendant by the victim.
>
> (5) Any other relevant conduct by the victim that substantially contributed to the danger presented.
>
> (6) The proportionality and reasonableness of the defendant's response to the victim's provocation.

On balance, the Court concludes that these factors militate in favor of departing downward.

The record does not reveal any information about the size and strength of the victim, or otherwise indicate the first factor is particularly important.  The second factor -- the persistence of the victim's conduct and any efforts by the defendant to prevent confrontations -- is prevalent in this case and counsels in favor of a downward departure.  The third factor -- the danger reasonably perceived by the defendant, including the victim's reputation for violence -- also supports departing downward.  The Court does not have any indication of the victim's reputation for violence, but the Court believes that the defendant reasonably perceived himself to be in danger.  The Court believes the fourth factor --the danger actually presented to the defendant by the victim -- is fairly neutral.  The Court finds there was a danger and a confrontation, but Sam does not appear to have had a knife, although it appears that Trujillo's belief that Sam had a knife was reasonable in this case.  The fifth factor -- any other relevant conduct of the victim that substantially contributed to the danger presented -- further supports departing downward.  Sam questioned Trujillo's willingness to use the firearm and moved towards him when Trujillo was pointing the firearm at Sam.  The sixth and final factor -- the proportionality and reasonableness of the defendant's response to the victims's provocation -- cuts against departing downward because shooting Sam was an excessive response to Sam's behavior.  In sum, the Court concludes that some factors are not present or neutral, one factor cuts against a downward departure, but the balance of the factors suggest that there was provocation in this case warranting a downward departure.  And while victim misconduct not sufficient to warrant application in certain situations -- such as cases of criminal sexual abuse -- the Court believes that victim misconduct is an appropriate basis for a downward departure in a case of assault and manslaughter.

This case is factually similar to cases where the United States Court of Appeals for the Tenth Circuit and the Supreme Court of the United States have found district courts acted within their

-6-

discretion in departing downward under U.S.S.G. § 5K2.10.  In <u>United States v. Tsosie</u>, 14 F.3d 1438 (10th Cir.1994), <u>overruled on unrelated grounds by</u> <u>United States v. Benally</u>, 215 F.3d 1068, 1074 (10th Cir.2000)(overruling the analysis of aberrant behavior), the Tenth Circuit upheld a downward departure based on the following circumstances:

> At approximately 3:30 p.m., on his way back to his home, [Tsosie] saw his wife's van on the highway.  Tsosie tried to flag the van down, but it sped off.  Tsosie then turned his truck around and set out to catch his wife's van.  His wife eventually stopped her van and pulled it off on the side of the road.  Tsosie stopped his truck in front of the van.  He saw, sitting in the passenger side of the van, Stephen Arnold, a man [his wife,] Marjorie Fowler[,] had been having an affair with for a long time.  Tsosie had believed his wife was no longer seeing Arnold.
>
> Arnold exited the van, and Arnold and Tsosie began to fight. Arnold broke away and ran approximately 600 yards along the roadside with Tsosie following him in his truck.  Tsosie exited his truck, grabbed a survival type knife with a six inch blade and followed Arnold on foot as he climbed over a fence and crossed approximately 300 yards into an open field. Arnold stopped and began swinging his belt at Tsosie, striking him on the nose. Tsosie swung his knife several times at Arnold, causing a few superficial wounds, and then, when Arnold raised his leg, Tsosie struck him behind his left knee.  Tsosie and Arnold continued to roll on the ground exchanging punches.  Tsosie finally pushed Arnold from him and noticed Arnold was bleeding from his leg.
>
> Tsosie drove to a nearby trading post and told the cashier to call the police and an ambulance. Upon his return to Arnold, he placed a towel inside Arnold's pants, attempting to stop the bleeding. When the ambulance arrived, 47 minutes later, Arnold was dead.

14 F.3d at 1440.  The Tenth Circuit held that the district court was justified and reasonable when it departed downward from a guideline range of 41 to 51 months to a sentence of 4 months to be served in a half-way house based, in part, because, under U.S.S.G. § 5K2.10, Arnold provoked Tsosie:

> We find that Arnold's conduct contributed significantly to provoking Tsosie's offense behavior.  Arnold's conduct consisted not merely of having an affair with Tsosie's wife but also of being in a vehicle with Tsosie's wife the day after she took her children away and gave a false excuse about her whereabouts. Tsosie, who believed the affair with Arnold was over, was surprised and angered. Further, in the ensuing

> fight, Arnold took off his belt and hit Tsosie on the nose with it and actively participated in the affray during which his leg was stabbed.

14 F.3d at 1442. See Koon v. United States, 518 U.S. at 101 (finding a district court acted within its discretion in departing downward 5 levels under U.S.S.G. § 5K2.10 where the defendants attacked a victim who "posed no objective threat, and the defendants had no reasonable perception of danger," because "the incident would not have escalated to this point, indeed it would not have occurred at all, but for Mr. King's initial misconduct"); United States v. LaVallee, 439 F.3d at 708 (finding no abuse of discretion where a district court departed downward because the victim "made sexually explicit remarks to a female officer, threatened [the defendant] immediately before the assault, and made an aggressive move toward him"). Cf. United States v. Jones, No. CR 07-297 JB, 2008 WL 2323512 (D.N.M. Jan. 29, 2008)(Browning, J.)(rejecting a request for a downward departure where a defendant took drastic measures -- using a machete to hack through a door -- to pursue a victim, who earlier punched the defendant, after the victim retreated). The Court concludes that the cases in which the Tenth Circuit and the Supreme Court have dealt with downward departures under § 5K2.10 weigh in favor of granting Trujillo's request for a downward departure. The Court grants Trujillo's request, and departs downward 7 levels to an offense level of 19, which provides a Guidelines sentence of 30 to 37 months. A further departure would drift into the territory of an involuntary manslaughter, which the Court thinks would not adequately reflect the seriousness of a voluntary homicide. See U.S.S.G. § 2A1.4 (providing a base offense level of 18 for involuntary manslaughter involving reckless conduct). The Court believes a sentence at the low end of the Guideline range of 30 months is appropriate. The Court has carefully considered Trujillo's argument that the Court should look at the appropriateness of the overall sentence, and not consider the sentence count-by count, and the Court agrees with that principle. On the other hand, to not give

any imprisonment time for the voluntary homicide would be to undercut the two separate charges and would undermine the congressional intent behind requiring the 120 months to be served consecutively to any sentence for the homicide.  See 18 U.S.C. § 924(c)(1)(D)(ii)("[N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.").

## II.     THE COURT DENIES TRUJILLO'S REQUEST FOR A VARIANCE.

The Court denies Trujillo's request for a variance, because a sentence of less than 150 months would not adequately serve the purposes set forth in 18 U.S.C. § 3553(a).  The Court notes that Trujillo is an enrolled member of the Navajo Nation charged with the unlawful killing of Sam, also a registered member of the Navajo Nation, with a .45 caliber pistol.  The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals.  Specifically, the Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant.  The Court believes that, with the downward departure it has granted, the punishment that is set forth in the guidelines is appropriate for this sort of offense.  The Court finds that a total sentence of 150 months adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).")(citation

omitted) -- the Court believes this sentence is reasonable. The Court thinks that a further reduction would not adequately serve the purposes set forth in 18 U.S.C. § 3553(a). A further reduction would effectively not give any sentence for the homicide or would treat the voluntary homicide more like an involuntary homicide, and would frustrate Congress' intent that the 120 month sentence be served consecutively to the sentence for the voluntary homicide. See 18 U.S.C. § 924(c)(1)(D)(ii). Finally, the Court believes Trujillo's lack of any criminal history is adequately reflected in the applicable guideline range. The Court believes a sentence of 150 months is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act.

The Court will also place Trujillo on supervised release for a term of 3 years for each Count, with the terms running concurrently. As part of his supervised release, Trujillo must comply with the mandatory conditions of supervised release and the following special conditions:

> Trujillo must successfully complete a substance abuse treatment program which may include drug testing out patient counseling or residential placement. Trujillo is prohibited from obstructing or attempting to obstruct or tamper in any fashion with the collection, efficiency, and accuracy of any substance testing device or procedure. Trujillo may be required to pay a portion of the cost of treatment and/or drug testing as determined by the probation office.

> Trujillo must submit to a search of his person, property, or automobile under his control, to be conducted in a reasonable manner and at a reasonable time for the purpose of detecting alcohol, illegal drugs, firearms, or contraband at the direction of the probation officer. Trujillo must cooperate with any search of his residence.

> Trujillo must participate in and successfully complete a mental health treatment program, which may include outpatient counseling, residential placement, or prescribed medication as approved by the probation officer. Trujillo may be required to pay a portion of the cost this treatment as determined by the probation office.

The Mandatory Restitution Act applies in this case, and the Court must order Trujillo to pay

restitution without regard to his ability to pay and with regard to the cost of collection. Trujillo shall pay $867.03 to the victim's family to the following as follows:

> Clerk of the Court, Attn: Intake
> Case No. 1:08 CR 02575-001JB
> 333 Lomas Blvd. N.W., Suite 270
> Albuquerque, New Mexico 87102

Based on Trujillo's inability to pay a fine because of his lack of financial resources, the Court will not impose a fine. Trujillo is required to pay a special assessment of $100.00 per count, for a total of $200.00, due immediately.

**IT IS ORDERED** that: (i) as to the Information, Defendant Floyd Lewis Trujillo, Jr. shall be committed to the custody of the Bureau of Prisons ("BOP") for a term of 30 months; (ii) for Count 2 of the Indictment, Trujillo shall be committed to the custody of the BOP for a term of 120 months; (iii) the terms of commitment shall run consecutively for a total term of 150 months; (iv) as to the Information, Trujillo shall be placed on supervised release for 3 years; (v) for Count 2, Trujillo shall be placed on supervised release for 3 years; and (vi) the terms of supervised release shall run concurrently.

                                                                                 _____
                                                                                  UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Jack Burkhead
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

John Van Butcher
  Assistant Federal Public Defender
Federal Public Defender's Office
District of New Mexico
Albuquerque, New Mexico

    *Attorney for the Defendant*